On the trial it was alleged by the plaintiff that Martin and Munrow, with an intention to defraud the plaintiff Allen, to whom Munrow was indebted, agreed to make and execute the note as above; that Martin, the obligor, should write the name of John Clark, the witness; and when so executed, that Munrow should endorse as above to Allen, the plaintiff, *Page 35 
in satisfaction of the debt he owed him. But of this there was no direct and positive proof — indeed, no legal evidence.
The plaintiff then alleged that the note was without a witness; offered to prove the handwriting of the obligor, John Martin; and also offered to prove that the name of John Clark was in the handwriting of John Martin, the obligor, and written by him for the purpose of (43) effecting the fraud as above alleged. But, as it seemed agreed on all hands that a man of the name of John Clark lived in the house of Martin in May, 1811, the court refused the evidence until the absence of the said John Clark was accounted for. The plaintiff then proved that a man of the name of John Clark, who had lived at the house of Martin, the obligor, in Iredell County, about the time the note was executed, had been seen in the neighborhood of Martin, after this suit was at issue; and the counsel of the plaintiff stated (and his statement was admitted as true) that he acted as agent in fact for Allen, the plaintiff, who lived in the State of Virginia, and that he had inquired after the same John Clark, and could not find out where he was, but had been informed that he had left the country.
It was then proved that the supposed witness, John Clark, at or near the time of the trial, and for several months before that time (long enough to have procured his deposition, and within the knowledge of the plaintiff), had lived and did live in the State of South Carolina, not far from Winnsborough in that State.
The witnesses who proved that a man of the name of John Clark had lived about the house of Martin, the defendant, also proved that he was not often publicly seen in the neighborhood. And two respectable witnesses swore that they considered the said Clark as a transient person who occasionally came into the neighborhood and went off again, and was, in their opinion, of suspicious character.
Upon this evidence the plaintiff moved the court for leave to prove the handwriting of John Martin, the obligor, and that he also wrote the name of John Clark; and though he had never issued a subpoena for John Clark, the witness, nor had ever taken a commission for taking his deposition, the court admitted him to do so. The plaintiff then produced and swore Andrew Carson and Samuel Wales, esquires, who said on oath that they had seen John Martin, the obligor and defendant, write; that they were acquainted with his handwriting, and that they believed he wrote the note, signed his name to the same, and that he also signed the name of John Clark that appeared on the said (44) note.
Upon this evidence, the court admitted the note to be read, and directed a verdict for the plaintiff, subject to the opinion of the court if *Page 36 
such evidence was properly admitted, which was found and rendered accordingly. The court doubting as to the admissibility of the evidence, ordered this cause to be sent to the Supreme Court for its decision.
First, whether a party is bound to take a commission and procure the deposition of an instrumental witness, who lives beyond the process of the court (the place of his residence being known to him), before he can be admitted to prove his handwriting.
Secondly, as this case is circumstanced, shall he do so, or may he prove the name of the witness written fraudulently by another person without first procuring the testimony of the supposed witness, if probably known to him, as in this case?
An instrumentary or subscribing witness is required to be produced on the ground that the testimony of a person who has placed his name as attesting witness to a paper can give more satisfactory evidence of its execution than any other; and not, as it is frequently said, that he is presumed to know the consideration on which it was given. As the rule holds as well where the question is simply as to its execution as where an illegal consideration is alleged in the pleadings, and as long as that presumption holds, so long the rule prevails; but when it is destroyed, the next best evidence of which the nature of the case admits will be received. And that presumption may, in various ways, be destroyed, as by proving that the witness is dead, or out of the reach of the process of the court, or that diligent search had been made for him and that he cannot be found; in which cases proof of his handwriting may be made; also by proving that it is a fictitious signature, or that (45) it is in the handwriting of the obligor himself, or of the obligee, where the bond is assigned, as in the present case; in which latter cases it is as if there was no subscribing witness; when evidence of the handwriting of the obligor, as the best the nature of the case affords, would be proper. Thus we think that the judge did right in suffering the bond to go to the jury, independently of the circumstances of fraud arising out of the case, that it was a base contrivance between the obligor and the obligee to cheat and defraud some person by endorsing or transferring it. And we cannot forbear to observe that if the facts stated in this case be true, we scarcely know more fit subjects for a criminal prosecution than the parties concerned. Let the rule, therefore, for a new trial be discharged.
NOTE. — See Tulloch v. Nichols, 1 N.C. 27, and the cases referred to in the note; see, also, the note to Clements v. Eason,2 N.C. 18. *Page 37